2000 ND 93

**Lloyd HAMERS, paternal grandparent of J.H., Plaintiff and Appellant,**

v.

**Diane GUTTORMSON, f/k/a Diane Hamers, Defendant and Appellee.**

No. 990170.

Supreme Court of North Dakota.

May 11, 2000.

Kevin J. Chapman, Chapman Law Office, Williston, N.D., for plaintiff and appellant.

Gary Michael Beaudry, Williston, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Lloyd Hamers, the paternal grandparent of J.H. ("John," a pseudonym), appealed from a judgment denying Hamers' petition for custody of John and awarding custody to Diane ("Guttormson") Sheehan, John's natural mother. We hold the trial court's custody award is not clearly erroneous, and we affirm.

I

[¶ 2] Diane and Richard Hamers, the natural father of John, were married in October 1993 and John was born in May 1994. In November 1995, a Montana trial court granted Richard and Diane a dissolution of marriage and awarded custody of John to Richard with visitation privileges for Diane. Shortly after the divorce Richard moved with John to South Dakota. They resided there until Richard was killed in a motor vehicle accident in December 1997. After Richard's fatal accident, Lloyd took John to reside in his home at Tioga and filed a petition with the district court seeking custody of John. Diane, through her attorney, filed an admission of service, and an evidentiary hearing was held on Lloyd's petition on August 26, 1998. The trial court found there did not exist exceptional circumstances upon which to award custody of John to a third party rather than to his natural mother. Judgment was entered denying Lloyd's petition for custody and awarding custody to Diane, from which Lloyd filed this appeal.

II

[¶ 3] On appeal Lloyd argues there are exceptional circumstances in this case entitling him to have custody of John. He asserts the trial court's award of custody to Diane is, therefore, clearly erroneous.

[¶ 4] An award of custody is a finding of fact, which this Court will not disturb unless it is clearly erroneous. *Brown v. Brown*, 1999 ND 199, ¶ 10, 600 N.W.2d 869. Under N.D.R.Civ.P. 52(a) a finding of fact is clearly erroneous only if it is induced by an erroneous view of the law or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 5] It is well-settled that parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person. *Patzer v. Glaser*, 396 N.W.2d 740, 743 (N.D.1986); *Hust v. Hust*, 295 N.W.2d 316 (N.D.1980). That right, however, is not absolute, and in custody disputes between a natural parent and a third party exceptional circumstances may require, in the child's best interests to prevent serious harm or detriment to the child, that the child be placed in the custody of a third party rather than with the natural parent. *In Interest of E.J.H.*, 546 N.W.2d 361, 364 (N.D.1996). While this Court has not attempted to narrowly define or circumscribe the exceptional circumstances which must exist to permit a court to consider

placing custody of a minor child with a third party rather than with the natural parent, each case in which such a placement has been upheld by this Court has involved a child who has been in the actual physical custody of the third party for a sufficient period of time to develop a psychological parent relationship with that third party. *See Worden v. Worden*, 434 N.W.2d 341, 342 (N.D.1989). A person who provides a child's daily care and who, thereby, develops a close bond and personal relationship with the child becomes the psychological parent to whom the child turns for love, guidance, and security. *Patzer*, 396 N.W.2d at 743. The establishment of a psychological parent relationship, however, does not end the court's inquiry; rather it necessitates further inquiry as to whether the exceptional circumstances of the case require the child to remain in the custody of the psychological parent, rather than be placed with the natural parent, to prevent serious detriment to the welfare of the child. *Id.*

■ [¶ 6] John's grandfather candidly admits there is not a psychological parent relationship between himself and John. Rather, he supports his claim for custody on the ground John's mother, Diane, has abandoned John by failing to pay support and by failing to have significant contact with him since she and Richard were divorced. Regarding Lloyd's abandonment argument, the trial court made the following relevant findings of fact:

> ... Diane continually attempted to obtain visitation with the child while the child was residing in South Dakota, but because of the expense of the traveling distance and the economic condition of Diane, she was unable to maintain a frequent visitation schedule. However, the record is full of evidence indicating her constant attempt to maintain contact with the child through the mail and by telephone. There is no evidence indicating that she abandoned the child at any time. Rather, the evidence shows that she frequently attempted visitation.

There is substantial evidence in the record to support the trial court's findings on this issue. In concluding Diane did not abandon John, the court specifically found that after Richard moved with John to South Dakota, Diane employed an attorney to assist her "in obtaining visitation privileges." There is substantial record evidence Richard attempted to secret John from Diane and to frustrate Diane's attempts to contact and have visitations with John.

■■ [¶ 7] The Montana divorce decree ordered Diane to pay $35 per month in child support, which she has failed to do. This is a concern, because payment of support and fulfilling other parental duties are important although not necessarily determinative factors to consider in determining whether a parent has abandoned a child. *See, e.g., Matter of Adoption of A.M.M.*, 529 N.W.2d 864, 866 (N.D.1995). A failure to pay support, does not, in itself, constitute abandonment. *Id.* Neither Diane's meager financial status nor Richard's attempts to frustrate contact between John and Diane excuse her failure to pay support. They are, nevertheless, appropriate factors for the court to consider in deciding whether Diane intended to abandon John. From our review of the entire record, we are not left with a definite and firm conviction the trial court made a mistake in finding Diane did not abandon John.

■ [¶ 8] The trial court ordered a home study of Diane and her current husband, Mike Sheehan, which was conducted by Sam Hubbert of Catholic Social Services in Helena, Montana. Diane and Mike reside in Helena with their daughter, M.S., who was born in December 1996 and with Diane's daughter, N.P., born in December 1986, from a prior marriage. Hubbert concluded Diane possesses appropriate parenting skills and he would have "no concerns" that awarding custody to Diane would impose "a significant risk of harm to John's physical or psychological well-being." Hubbert recommended the

court place John in Diane's custody. The trial court found Diane "possesses the parenting skill and ability to provide for the care, custody, and best interest of [John]." The record evidence supports the court's finding.

 [¶ 9] Lloyd's primary contention in these proceedings is that Diane is unfit to parent John and that Lloyd possesses better parenting skills and ability to provide for John's welfare. Lloyd's focus ignores the well-settled principle that a court cannot award custody to a third party, rather than the natural parent, under a best-interest-of-the-child test unless exceptional circumstances exist to trigger the best interest analysis. *Worden v. Worden*, 434 N.W.2d at 342. Absent exceptional circumstances, the natural parent is entitled to custody of the child, even though the third party may be able to offer more amenities. *Id.* He asks us to expand our previous holding of exceptional circumstances to include a parent's fitness. We decline to do so. Where a natural parent's fitness to provide a minimal standard of adequate care of a child is at issue, proceedings under the Uniform Juvenile Court Act, N.D.C.C. ch. 27–20, are available to protect and safeguard the interests of both parent and child. *Id.* at 343. It is improper, however, to deprive a natural parent custody on the ground of unfitness in proceedings such as these wherein parental fitness is not the appropriate test. *Id.*

### III

[¶ 10] We have reviewed the record in this case. We are unpersuaded there are exceptional circumstances to trigger a consideration by the court of whether, in John's best interests, custody should be awarded to Lloyd, or any other third party, rather than John's natural mother, Diane. We conclude the trial court's findings are not clearly erroneous and its award of custody to Diane is not in error.

[¶ 11] Judgment affirmed.

[¶ 12] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.