2003 ND 127

In the Interest of D.P.O.

D.P.O., A.D.O., the parent and natural mother of D.P.O., G.O., grandparent of D.P.O., and the Grand Forks County Social Service Board, Assignee for A.D.O. and G.O., Plaintiffs,

v.

N.H., Defendant and Appellant,

G.O., grandfather of D.P.O., and L.O., grandmother of D.P.O., Appellees.

In the Interest of D.P.O.

D.P.O., A.D.O., the parent and natural mother of D.P.O., G.O., grandparent of D.P.O., and the Grand Forks County Social Service Board, Assignee for A.D.O. and G.O., Plaintiffs,

v.

N.H., Defendant and Appellee,

G.O., grandfather of D.P.O., and L.O., grandmother of D.P.O., Appellants.

Nos. 20030002, 20030020.

Supreme Court of North Dakota.

Aug. 20, 2003.

Rehearing Denied Sept. 23, 2003.

Ralph F. Carter, Moosbrugger, Carter & McDonagh, P.L.L.P., Grand Forks, N.D., for defendant, appellant, and appellee, N.H.

Rex A. Hammarback, Hammarback, Dusek & Associates, P.L.C., Grand Forks,

N.D., for appellees and appellants, G.O. and L.O.

VANDE WALLE, Chief Justice.

[¶ 1] G.O. ("Glen") and L.O. ("Laura"), the maternal grandparents of D.P.O. ("Denise"), appealed from a judgment awarding custody of Denise to her biological father, N.H. ("Ned"). Ned has appealed from that part of the judgment awarding Glen and Laura grandparent visitation. We affirm.

## I

[¶ 2] Ned and Denise's mother, A.O. ("Ann"), had a brief relationship in 2000 from which Denise was conceived, but the couple never married. Denise was born on February 23, 2001. Ned was not informed of Ann's pregnancy or the child's birth until months later, and he did not know he was the biological father until December 18, 2001, after paternity tests had been completed. Upon learning he was Denise's father, Ned immediately took action to start visitations and to pay child support.

[¶ 3] Three days after Denise was born, Ann, who was then incarcerated, placed Denise in Glen and Laura's physical custody. On September 26, 2001, Ann stipulated that Denise was a deprived child, and legal custody was placed with Grand Forks County Social Services. On June 13, 2002, Ned filed a motion seeking court-ordered custody of Denise. Denise remained in the physical custody of her maternal grandparents until mid October 2002, when she was placed with Ned. On August 13, 2002 a petition was filed by Grand Forks County Social Services to extend Denise's custody placement with that office. On September 18, 2002, Glen filed a motion requesting that Denise be placed in the physical custody of her maternal grandparents. Ann acquiesced in

that request, but she later requested the court to place custody of Denise with her. Attorney Carol Johnson was appointed custody investigator and attorney Mary Seaworth was appointed Denise's guardian ad litem.

[¶ 4] All issues in these cases were consolidated for trial on November 20, 2002. After the trial, the court awarded legal custody jointly to Ned and Ann and awarded Ned physical custody, with supervised visitation for Ann and separate visitation for the maternal grandparents.

## II

[¶ 5] Glen and Laura appealed from the court's custody placement, asserting the court's decision was clearly erroneous because the court failed to give adequate consideration to the grandparents' psychological parent relationship with Denise. They also claim the court arbitrarily disregarded the expert testimony of Maxine Rasmusson, Ph.D., that removing Denise from the grandparents' custody would be detrimental to her.

### A.

[¶ 6] An award of custody is a finding of fact which this Court will not disturb unless it is clearly erroneous. *Hamers v. Guttormson*, 2000 ND 93, ¶ 4, 610 N.W.2d 758. Under N.D.R.Civ.P. 52(a), a finding of fact is clearly erroneous only if it is induced by an erroneous view of the law or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made. *Id.* Parents generally have a right to the custody and control of their children superior to that of any other person. *Goter v. Goter*, 1997 ND 28, ¶ 7, 559 N.W.2d 834. Absent exceptional circumstances triggering a best-interest analysis, a natural parent is entitled to custody of his or her child. *Id.*

*See Hust v. Hust,* 295 N.W.2d 316, 319 (N.D.1980). Establishment of a psychological parent relationship does not end the trial court's inquiry in making a custody decision, but merely furnishes a justification for the award of custody to a party other than the natural parent. *Daley v. Gunville,* 348 N.W.2d 441, 445 (N.D.1984). When a psychological parent and a natural parent each seek a court-ordered award of custody, the natural parent's paramount right to custody prevails unless the court finds it in the child's best interests to award custody to the psychological parent to prevent serious harm or detriment to the welfare of the child. *Cox v. Cox,* 2000 ND 144, ¶ 22, 613 N.W.2d 516; *Simons v. Gisvold,* 519 N.W.2d 585, 587 (N.D.1994).

[¶ 7] A brief recitation of the relevant facts will enable our review of the trial court's custody decision. Ann, age 23, resides in Bemidji, Minnesota, and is completing her first year of college there. Ned, age 30, is a Syrian citizen, living in Grand Forks on a work visa which expires in 2004. The visa is renewable upon his employer's request unless there is good cause shown why it should not be renewed. Ned has lived in Grand Forks for about four years and is employed at the University of North Dakota School of Medicine, with an annual salary of about $44,000. He plans to continue his education and to obtain a Ph.D. in information systems.

[¶ 8] The trial court found that Glen and Laura have established a psychological parent bond with Denise, but that finding alone does not determine custody. The court also found that a bond has developed between Denise and Ned. The court specifically found "there was nothing presented" to show that "awarding physical custody to one of the biological parents at this time would constitute serious harm or detriment to [Denise], especially if con-tinuing contact were allowed between [Denise] and her maternal grandparents."

[¶ 9] The trial court evaluated the factors under N.D.C.C. § 14–09–06.2, to determine whether, in Denise's best interests, she should be placed in the physical custody of Ned or Ann. The court found that the bond between Ned and Denise had been conclusively established but that, because of Ann's prolonged absence from her daughter's life, very little bonding had occurred between Ann and Denise. The court found that both parents love their daughter, but that only Ned had taken positive steps to learn how to be a parent by taking formal parenting classes and by seeking to provide a nurturing home environment for Denise. The court found that Ned offers the greater likelihood of providing a permanent stable environment for Denise.

[¶ 10] The court found that Ann has a history of violent behavior which has resulted in criminal convictions and periods of incarceration. He also found that she has exhibited bizarre behavior and emotional instability and needs professional attention. Consequently, the court found that Ned has the better physical and mental health as a parent.

[¶ 11] The court found that the maternal grandparents have been an integral part of Denise's life but that the relationship between the biological parents and the maternal grandparents is quite strained. The court found that it is in Denise's best interests the maternal grandparents remain a part of her life.

[¶ 12] We conclude the trial court's findings on the custody issue are supported by the record evidence and are not clearly erroneous. After finding the maternal grandparents had established a psychological parent relationship with the child, the court properly applied the law in determining whether those exceptional cir-

cumstances required, in the child's best interests, that she be placed with the maternal grandparents rather than one of her natural parents to prevent serious harm or detriment to the welfare of the child. The court concluded the evidence did not demonstrate that Denise would suffer serious harm or detriment if she were placed in the custody of one of her natural parents rather than her psychological parents.

### B.

■ [¶ 13] The grandparents assert the court "arbitrarily disregarded" testimony of Dr. Rasmusson, who is engaged in a marriage and family counseling practice in Grand Forks. The court-appointed custody investigator, attorney Carol Johnson, recommended Ned be awarded physical custody and the maternal grandparents be given visitation. The court-appointed guardian for the child also recommended custody be awarded to Ned. However, Dr. Rasmusson testified that if a child is removed from its caregiver after a twenty-month period it would be detrimental to the child. She testified that she did not, however, observe Denise long enough with the maternal grandparents to form an opinion whether the child had psychologically bonded with them. She also testified that she had never interviewed the child's mother or father and that she had not reviewed any documents from social services or medical providers regarding the case. It is for the trial court to weigh an expert's opinion against the specific facts and circumstances of a case. *See Daley v. Gunville*, 348 N.W.2d 441, 445–46 (N.D. 1984). This record does not reflect that the trial court arbitrarily disregarded Dr. Rasmusson's testimony.

[¶ 14] We conclude the trial court applied the appropriate law in reaching its custody decision and the court's finding that in Denise's best interests physical custody should be awarded to Ned is supported by the record evidence and is not clearly erroneous.

### III

■ [¶ 15] Ned appealed from that part of the judgment which awarded visitation to the maternal grandparents. He asserts the court should not have awarded grandparent visitation under N.D.C.C. § 14–09–05.1, because the grandparents did not make a specific request for visitation. That statute provides in relevant part:

The grandparents and great-grandparents of an unmarried minor may be granted reasonable visitation rights to the minor by the district court upon a finding that visitation would be in the best interests of the minor and would not interfere with the parent-child relationship. . . . An application for visitation rights under this section may be considered by the district court in conjunction with a divorce proceeding involving the parent of the minor child. If any district court of this state retains jurisdiction over the custodial placement of the minor child or children by virtue of any prior proceedings, the rights conferred by this section may be enforced by the grandparents or the great-grandparents through motion under the prior proceeding. If no district court otherwise has jurisdiction, a proceeding to enforce grandparental rights may be brought against the custodial parent as a civil action and venued in the county of residence of the minor child.

■ [¶ 16] Generally, it is error for the trial court to direct grandparent visitation privileges under this statute that are not requested. *Peterson v. Peterson*, 1997 ND 14, ¶ 23, 559 N.W.2d 826. We explained the purpose of the statute in requiring a request for grandparent visita-

tion in *Alvarez v. Carlson*, 474 N.W.2d 79, 82–83 (N.D.1991):

> Although the children's paternal grandmother testified at the hearing, she did not file a motion requesting the court to award her visitation privileges. The statute envisions enforcement of rights granted under the provision by motion or by the filing of a separate action if the court does not have jurisdiction under a prior proceeding. By requiring the grandparent to request visitation through a motion or a separate action, the statute protects the rights of the custodial parent or other interested party who may be adverse to the request, giving them notice and an opportunity to voice objection to the request. Absent a motion requesting visitation privileges, the court should not have awarded the paternal grandmother visitation under the statute.

■ [¶ 17] We conclude the statutory requirement that the grandparents must request visitation has been substantially complied with by Glen and Laura in this case. After having had physical custody of the child for the first 20 months of her life, these maternal grandparents filed a petition with the court seeking an award of permanent physical custody as the psychological parents. Glen testified during the hearing that if the grandparents were not awarded custody they would want to maintain as much of a relationship with the child as the court would permit. We conclude that Ned and Ann were given adequate notice and opportunity to respond to the grandparents request for custody or other significant relationship with the child, including visitation privileges.

■ [¶ 18] Ned also asserts the grandparents should not have been awarded visitation, because there was no finding by the court that visitation would not interfere with the parent-child relationship.

The trial court's determination on visitation is a finding of fact that will not be overturned on appeal unless it is clearly erroneous. *Schempp–Cook v. Cook*, 455 N.W.2d 216, 217 (N.D.1990). The statute expressly requires the court, as a prerequisite to awarding grandparent visitation, to determine whether the visitation would be in the best interests of the child and whether the visitation would interfere with the parent-child relationship. *Id.* The trial court found the maternal grandparents had established a psychological bond with the child, but also found that the evidence did not demonstrate the child would suffer serious harm or detriment if custody was awarded to one of the natural parents "especially if continuing contact were allowed between [Denise] and her maternal grandparents." The court also made the following specific finding:

> [Denise's] maternal extended family in Grand Forks [has] been an integral part of her life since her birth. Unfortunately for the young child, the relationship between her biological parents and her extended family is quite strained. Regardless of the custody determination, it appears that the maternal grandparents certainly should remain a part of [Denise's] life. It is in her best interests that they do. For that to happen, however, every party to this action is going to have to put their personal feelings about one another and the past behind them. If they can't or won't, they will be responsible for causing perhaps irreparable harm to these relationships. If they can't or won't, they won't have [Denise's] best interests at heart.

[¶ 19] We conclude these findings by the trial court are adequate to meet the statutory requirement that the court find an award of grandparent visitation is in the child's best interests and will not interfere with the parent-child relationship.

The court's findings imply that not only is it in Denise's best interests that she continue to have substantial contact with the maternal grandparents but that serious harm could result to her if such contact were not presently allowed.

[¶ 20] Ned claims grandparent visitation would interfere with his parent-child relationship in this case, because the maternal grandparents are biased against his nationality and religion. Relevant to this issue the trial court made the following findings of fact:

> [Ann] and her parents both expressed fear that if [Ned] were awarded legal custody of [Denise], he would remove her from the United States and they would thereafter be unable to have any contact with her.
>
> . . . .
>
> Because of their obvious deep-rooted concerns about the mid-eastern Islamic culture and perceived universal Muslim attitudes toward females, the [grandparents] feel that [Ned] either will not, or is simply incapable of, providing the needed care and nurturing for [Denise]. The court makes a specific finding that these concerns are unfounded in this particular case. Other than a litany of concerns expressed by their attorney, nothing in the form of admissible evidence was presented to lend credence to them, nor about [Ned] being unfit to be a custodial parent of his daughter.

Although the grandparents expressed concern that Ned's cultural background could result in parenting differences from their own and also expressed concern that he might attempt to flee from this country with Denise, the court found those concerns were unfounded. The court did not find that the grandparents, by expressing these concerns, held a bias or prejudice against Ned that would result in their visitations interfering with his parent-child relationship. From a review of the record evidence, we conclude the findings of the court are not clearly erroneous. The trial court can revisit the matter of grandparent visitation if there is evidence of interference with the parent-child relationship.

IV

[¶ 21] We conclude the trial court's finding that, in Denise's best interests, she should be placed in the physical custody of her father, Ned, is not clearly erroneous.

[¶ 22] We further conclude the trial court's award of grandparent visitation is in accordance with the statutory requirements and is not clearly erroneous.

[¶ 23] Judgment affirmed.

[¶ 24] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., concur.

DALE V. SANDSTROM, J., I concur in the result.