FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
NOVEMBER 17, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 205

In the Interest of the Guardianship of A.D.

| | |
|---|---|
| S.K. and A.K., | Petitioners and Appellees |
| v. | |
| A.D., Child; M.K., Mother;<br>Jim Jacobson, Guardian ad Litem, | Respondents |
| and | |
| L.D., Father, | Respondent and Appellant |

## No. 20200299

Appeal from the Juvenile Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Patrick W. Waters, Bismarck, N.D., for petitioners and appellees; submitted on brief.

Laura C. Ringsak, Bismarck, N.D., for respondent and appellant; submitted on brief.

**Tufte, Justice.**

[¶1]  L.D., father of A.D., appeals a juvenile court order granting a guardianship for A.D. The father argues the court erred by finding A.D. to be a deprived child and failing to address the best interest factors and make an exceptional circumstances finding. We affirm.

I

[¶2]  In June 2020, A.D.'s aunt and uncle petitioned the juvenile court to appoint them guardians of A.D., alleging A.D. was a deprived child as defined by statute. A.D.'s father and mother opposed the guardianship. After a trial, the judicial referee granted the guardianship, finding A.D. to be a deprived child. The father requested review by a district court judge. After review, the district court judge adopted the judicial referee's findings and affirmed the order granting the guardianship. The father appeals.

II

[¶3]  The father challenges findings of the judicial referee. "The findings and order of the judicial referee have the effect of the findings and order of the district court until superseded by a written order of a district court judge." N.D. Sup. Ct. Admin. R. 13, § 10(a). The district court judge may review the judicial referee's findings and order on the judge's own initiative, and must do so if timely requested by a party. *Id.* at § 11(a). The district court judge reviews the record de novo, and the court may adopt the referee's findings, remand to the referee for additional findings, or reject the findings and issue its own findings. *Id.* at § 11(b)-(c). The juvenile court has exclusive original jurisdiction of proceedings to grant a guardianship for a child, except the testamentary appointment of a guardian for a minor governed by N.D.C.C. ch. 30.1-27. N.D.C.C. § 27-20.1-02.

> When the juvenile court judge reviews the referee's findings and order, the findings and order survive only to the extent the judge

chooses to adopt them. Upon review, the referee's findings and order constitute recommendations to the juvenile court judge. The juvenile court judge is given the ultimate authority to be the fact finder and adjudicator and to issue a final disposition. Once the juvenile court judge issues a final order, there remains no decision of the referee to reinstate if this Court were to reverse the juvenile court judge's decision.

*In re J.A.H.*, 2014 ND 196, ¶ 9, 855 N.W.2d 394 (quoting *Interest of B.F.*, 2009 ND 53, ¶ 15, 764 N.W.2d 170).

[¶4]   Here, the district court adopted the judicial referee's findings as its own under N.D. Sup. Ct. Admin. R. 13, § 11(b)(1). We do not set aside a juvenile court's findings of fact unless they are clearly erroneous. N.D.R.Civ.P. 52(a)(6). A finding of fact is clearly erroneous if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law. *J.A.H.*, 2014 ND 196, ¶ 7.

III

[¶5]   The father argues the juvenile court erred by finding A.D. was a deprived child.

[¶6]   A.D.'s aunt and uncle petitioned the juvenile court for a guardianship under N.D.C.C. ch. 27-20.1, alleging A.D. was a deprived child. Section 27-20.1-11(1)(d) (amended 2021), N.D.C.C., allows the court to appoint a guardian if it finds by clear and convincing evidence that the appointment is in the child's best interest and the child is deprived.[1] A deprived child includes a child who has been abandoned by the child's parents. N.D.C.C. § 27-20-02(8)(c) (repealed 2021).[2] Abandon means:

As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause:

---

[1] The 2021 Legislative Assembly changed the language from "deprived child" to "child in need of protection." 2021 N.D. Sess. Laws ch. 245, § 18.
[2] Chapter 27-20, N.D.C.C., was repealed by the 2021 Legislative Assembly, but was in effect throughout the entirety of this case. 2021 N.D. Sess. Laws ch. 245, § 45.

>    (1) To communicate with the child; or
>    (2) To provide for the care and support of the child as required by law[.]

N.D.C.C. § 27-20-02(1)(a) (repealed 2021). In deciding whether a child has been abandoned, we have outlined a number of considerations:

> We look to such factors as the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Also relevant is the parent's acceptance of parental obligations, such as to care for, protect, support, educate, give moral guidance to, and provide a home for the child. A parent's negligent failure to perform his parental duties is significant to the issue of abandonment.

*In re Adoption of H.G.C.*, 2009 ND 19, ¶ 12, 761 N.W.2d 565 (cleaned up).

[¶7] The juvenile court found by clear and convincing evidence that the father has not provided care for or had any contact with A.D. since 2007 or 2008, and has not made any significant attempts to locate A.D. or have A.D. placed in his care. The court found that although the mother testified she attempted to hide A.D. from the father due to "what the father did to her [the mother]," the father has been aware of A.D.'s whereabouts since at least late 2019. In 2019, the father attempted to speak with A.D. on the telephone, but A.D. refused. The court found the father made no further attempt to contact A.D. The court found the father had abandoned A.D. The juvenile court's findings are not clearly erroneous.

IV

[¶8] The father asserts the juvenile court did not address the best interest factors under N.D.C.C. § 14-09-06.2.

[¶9] Under N.D.C.C. § 27-20.1-11(1), the juvenile court must find by clear and convincing evidence that the guardianship appointment is in the child's best interest. *See also* N.D.C.C. § 27-20.1-12(1) (requiring the court to make findings as to whether the appointment of the guardian is in the child's best interest). "The best interests factors of N.D.C.C. § 14-09-06.2(1) are applied in

guardianship proceedings." *In re Guardianship of P.T.*, 2014 ND 223, ¶ 6, 857 N.W.2d 367. Those factors include, when applicable:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. In determining parental rights and responsibilities, the court shall consider evidence of

4

domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, residential responsibility for a child may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards residential responsibility to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent residential responsibility. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.

k.  The interaction and inter-relationship, or the potential for interaction and inter-relationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l.  The making of false allegations not made in good faith, by one parent against the other, of harm to a child.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14-09-06.2(1).

[¶10] The juvenile court made the following findings by clear and convincing evidence. The father has not cared for or had any contact with A.D. since 2007 or 2008, has not made any significant attempts to locate A.D. or have A.D. placed in his care, and has failed to enroll in any program to rebuild his relationship with A.D. Neither parent has provided any physical, emotional, psychological, or financial care for A.D. for the last four years. A.D. testified that her father committed severe domestic violence against her mother, she was afraid of her father, did not know her father, and did not want to live with him. A.D. testified she has grown close to her aunt and uncle and their family, and she feels safe, loved, and welcomed in their home. The court found this testimony credible in all material respects. The court found that A.D. was mature and reasonable, giving substantial weight to A.D.'s expressed preference to grant the guardianship, and that A.D.'s preference was not based on undesirable or improper influences. A.D. was without proper parental care or control, subsistence, education as required by law, or other care or control necessary for her physical, mental, or emotional health or morals, and the deprivation was not due primarily to the lack of financial means of the parents. A.D. was abandoned by both parents, and the guardianship was best suited for the protection and physical, mental, and moral welfare of A.D. The court found the aunt and uncle were fit and willing to serve as guardians, and the guardianship was in A.D.'s best interest.

[¶11] The father contends the juvenile court erred because it did not address the best interest factors. Section 27-20.1-11(1), N.D.C.C., requires the court to find by clear and convincing evidence that the appointment of a guardian is in the child's best interest. The court found the child was abandoned by both parents. The mother did not appeal, and we have now affirmed the finding as to the father. We are able to discern how the court's findings apply to the statutory best interest factors. The court was not required to specifically identify and discuss each best interest factor. The court made sufficient

findings to conclude that the guardianship was in the best interest of A.D. *See State v. P.K.*, 2020 ND 235, ¶ 15, 951 N.W.2d 254 (stating, "A court's findings are adequate if this Court is able to discern the factual basis for the court's decision, and the findings afford a clear understanding of its decision."). The juvenile court did not err in finding the guardianship was in A.D.'s best interest.

V

[¶12] The father argues the juvenile court was required to find exceptional circumstances existed in order to grant the guardianship, citing *Interest of G.L.*, 2018 ND 176, ¶ 7, 915 N.W.2d 685, which provides:

> When there is a custody dispute between a natural parent and a third party the test is whether or not there are exceptional circumstances which require that in the best interest of the child, the child be placed in the custody of the third party rather than with the biological parent. The court cannot award custody to a third party, rather than the natural parent, under a 'best interest of the child' test unless it first determines that 'exceptional circumstances' exist to trigger the best-interest analysis. Absent exceptional circumstances the natural parent is entitled to custody of the child even though the third party may be able to offer more amenities.

[¶13] In *Interest of G.L.*, the mother moved to terminate a voluntary guardianship over her daughters. 2018 ND 176, ¶¶ 2-3. The guardianship was previously stipulated to by her and the father and ordered by the juvenile court after a finding of deprivation. *Id.* at ¶ 2. After a hearing on the motion to terminate the guardianship, the court found the *impediments creating the deprivation had been removed*, made findings on the best interest factors, and continued the guardianship. *Id.* at ¶¶ 3-5. We reversed and remanded, concluding the court was required to make findings on whether exceptional circumstances existed before continuing the guardianship after the causes of the children's deprivation had been removed. *Id.* at ¶¶ 11-12.

7

[¶14] *Interest of G.L.* cites to *Worden v. Worden*, 434 N.W.2d 341 (N.D. 1989), for support. *Worden* was a custody case stemming from a divorce. *Id.* at 341. The trial court awarded custody of the child to the mother's husband, who was not the child's natural father, finding the mother's unstable lifestyle and the natural father's failure to visit the child constituted exceptional circumstances. *Id.* at 342. This Court reversed the husband's custody award, concluding exceptional circumstances did not exist. *Id.* at 343. We noted, however, that the case was not one of deprivation under N.D.C.C. ch. 27-20, stating:

> Where a natural parent's fitness to provide a minimal standard of adequate care for a child is at issue, proceedings under the Uniform Juvenile Court Act, Chapter 27-20, N.D.C.C., are available to protect and safeguard the interests of both parent and child. If [the mother]'s "unstable lifestyle" to which the trial court refers is serious enough to raise an issue of child deprivation, appropriate proceedings can be commenced under Chapter 27-20, N.D.C.C. It is improper to deprive [the mother] of [the child]'s custody on the ground of unfitness in these proceedings, because parental fitness is not the appropriate test.

*Worden*, 434 N.W.2d at 343; *see also Hamers v. Guttormson*, 2000 ND 93, ¶ 9, 610 N.W.2d 758 (same); *Hust v. Hust*, 295 N.W.2d 316, 320 (N.D. 1980) (stating that once a child is found to be deprived, "the parents' fundamental right to the child's custody was subrogated to the court's authority to make a custody determination in the best interests of the child pursuant to Section 27-20-30, N.D.C.C.").

[¶15] In *Interest of P.T.D.*, 2017 ND 248, ¶ 10, 903 N.W.2d 83, we further explained that the exceptional circumstances determination is not required once the court finds the child is deprived:

> [T]he juvenile court was not required to find exceptional circumstances to place the children with their grandmother and Stutsman County Social Services. The authority [the mother] relies upon relates to domestic relations under N.D.C.C. tit. 14 and does not apply to the removal and placement of a deprived child. We have noted the test for placing a child in the custody of someone other than a natural parent under N.D.C.C. tit. 14 differs from the

standard for determining parental fitness, which is governed by N.D.C.C. tit. 27. *See Hamers v. Guttormson*, 2000 ND 93, ¶ 9, 610 N.W.2d 758. Under N.D.C.C. § 27-20-30, a deprived child may be placed with a person or agency best suited to the protection and welfare of the child. The statute does not require a finding of exceptional circumstances to place a child with a relative or social services, but rather only requires the juvenile court find the child is deprived under N.D.C.C. § 27-20-02.

[¶16] In *In re R.K.*, 2002 ND 111, ¶¶ 8-14, 646 N.W.2d 699, we reversed a juvenile court order placing a child with his grandparents where the court made no finding of exceptional circumstances. The court found the child was deprived because his mother was unable to provide adequate care for him, but made no similar finding with regard to the father. *Id.* at ¶ 10. We concluded it was error to place the child with the grandparents without first finding that the child was deprived as to both parents or that exceptional circumstances required the placement. *Id.* at ¶¶ 12-13.

[¶17] In *Interest of Guardianship of J.O.*, 2021 ND 76, ¶ 15, 958 N.W.2d 149, we concluded that the juvenile court did not err when it extended a guardianship for reasons of deprivation under ch. 27-20 and made no finding of exceptional circumstances. However, we went on to state the exceptional circumstances determination is required when the guardianship is first implemented. *Id.* at ¶ 14. Whether an exceptional circumstances finding is required to grant a guardianship for a deprived child was not at issue in *Guardianship of J.O.* This statement was dictum because the case concerned whether to extend a guardianship, not whether to establish one. Further, we cited *Worden* for that proposition, which, as discussed above, was a divorce proceeding under N.D.C.C. tit. 14, not a deprivation case under N.D.C.C. tit. 27.

[¶18] An exceptional circumstances finding is required when both a parent and non-parent are suitable candidates. However, when the child is deprived by the parents, no finding of exceptional circumstances is required to be made by the court to grant a guardianship. The finding of deprivation eliminates the need for a finding of exceptional circumstances. Accordingly, because A.D. is a

deprived child, the juvenile court was not required to make a finding of exceptional circumstances in order to grant the guardianship.

## VI

[¶19] We affirm the juvenile court order granting a guardianship for A.D., concluding A.D. was a deprived child by way of abandonment, and the juvenile court was not required to specifically identify and discuss each best interest factor or make a finding of exceptional circumstances.

[¶20] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte