812 P.2d 365

**In the Matter of the GUARDIANSHIP PETITION OF LUPE C. and Pam C. for Christopher H., a child.**

**No. 12492.**

Court of Appeals of New Mexico.

April 30, 1991.

Thomas E. Lilley, Jesse R. Cosby, Lilley & Associates, Roswell, for petitioners-appellees.

James A. Gillespie, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for respondent-appellant.

Paul Snead, Brewer and Snead, Roswell, guardian ad litem.

## OPINION

DONNELLY, Judge.

The mother appeals an order of the district court appointing her daughter and son-in-law, Pam and Lupe C., temporary guardians of her child and transferring custody of the child to them pending further order of the court. We (1) construe the authority of the court to appoint guardians under the Probate Code, NMSA 1978, Section 45–5–204(A) (Repl.Pamp.1989); and (2) discuss the relationship between Section 45–5–204(A) and the provisions of the Children's Code dealing with neglected children. For the reasons discussed herein, we reverse and remand.

FACTS

The mother is the natural grandmother and adoptive parent of the six-year-old child who is at the center of this dispute. The mother adopted the child when he was two months old. Appellees (the guardians) are husband and wife; appellee Pam C. is an aunt of the child and is the sister of the child's biological mother.

On February 13, 1990, the guardians filed a petition seeking to remove custody of the child from the mother and requesting that they be appointed the child's guardians. The petition and the accompanying motion alleged that the mother had substantial physical, mental, and emotional problems that made her a danger to herself and others, including the child, and that rendered her unable to adequately care for the child. Prior to the giving of any notice to the mother, the district court held a hearing on the guardians' request that the child be immediately placed in their custody. Following the ex parte hearing, the court appointed a guardian ad litem for the

child and issued a temporary order directing that the child be removed from the mother's custody, and that custody of the child be immediately placed in the guardians.

Following service of the temporary order upon the mother, a hearing was held on February 16, 1990, to determine whether custody of the child should be continued with the guardians. The mother appeared at this hearing without a lawyer. The district court heard additional evidence at that hearing, and at the conclusion of the hearing the court directed that temporary custody of the child remain in the guardians "until further order" of the court. The order also provided that the mother be permitted visitation rights with the child "three to four times each week."

On March 23, 1990, a hearing was held on the merits of the appellees' petition for guardianship. The mother was represented by counsel at this hearing. At the outset of the hearing, over the objection of the mother, the district court ruled that the guardianship proceedings were governed by Section 45–5–204(A), a provision of the Probate Code, and not by the Children's Code or related statutes, NMSA 1978, Sections 32–1–1 to –59 (Repl.Pamp.1989). Conflicting testimony was presented concerning the mental and emotional condition of the mother and the mother's ability to care for the child. At the conclusion of the hearing, the district court entered a decision directing that the child should remain with the guardians under an order of guardianship.

The court's decision found, among other things, that "[a]ll parental rights of custody of [the mother] have been suspended by circumstances in that at this time [the mother] is unable to provide [the child] with a fit and suitable home environment," that "[the mother] has neglected [the child] in that at this time she is unable to furnish him with necessary emotional support and proper guidance," and that "[i]t is in the best interest of [the child] that he be temporarily placed in the home of [appellees] under their guardianship with visitation with his mother."

Based upon its findings the district court entered an order appointing appellees as temporary guardians of the minor child "until such time as this Court finds that [the mother] can provide [a] suitable home environment." The order further provided that the mother's rights of visitation were continued in accordance with the previous order of the court, and that the parties were ordered to participate in counseling and mediation.

DISCUSSION

A. *Jurisdictional Issue*

■ The mother contends that the district court erred in proceeding under Section 45–5–204(A). The first portion of the mother's challenge is jurisdictional: the mother contends that the children's court had exclusive original jurisdiction over this matter because the child was alleged to be a neglected child. *See* §§ 32–1–9(A)(3) and –9(B)(5). To the extent the mother argues the proceedings are void for lack of jurisdiction in the district court, this contention has been resolved against the mother by both our supreme court and this court. Under article VI, section 13 of the New Mexico Constitution, the district court is invested with original jurisdiction over "all matters and causes not excepted in this constitution." Thus, the district court has jurisdiction even if a statute purports to give exclusive jurisdiction to one division of the court. *See In re Guardianship of Arnall*, 94 N.M. 306, 610 P.2d 193 (1980); *In re Santillanes*, 47 N.M. 140, 138 P.2d 503 (1943).

■ The mother also argues that the district court should have applied the Children's Code rather than the Probate Code provisions because the Children's Code is the more specific statute. Intertwined with this appears to be an argument that the Children's Code repealed by implication the provisions of the Probate Code concerning guardianship. However, repeals by implication are not favored. *Clothier v. Lopez*, 103 N.M. 593, 711 P.2d 870 (1985); *see also In re Santillanes* (enactment of Juvenile Court Act did not divest district court of equitable power to appoint guardians for minors). Moreover, where two statutes

treat generally similar subject matter, the courts will read the statutes in pari materia, and will attempt to construe the statutes to give effect to both. *Clothier v. Lopez; State ex rel. Department of Human Servs. v. Avinger,* 104 N.M. 355, 721 P.2d 781 (Ct.App.1985). Thus, we determine the gravamen of this contention involves the proper construction of Section 45–5–204(A) and the relationship between it and other bases of authority for the appointment of a guardian for a child. We begin by examining the relationship among and between the various sources of authority to appoint a guardian.

### B., *Sources of Authority for the Appointment of a Guardian*

In New Mexico there are four principal sources of law authorizing the appointment of a guardian for a minor. Two of these can be identified and dismissed since they were not relied on by the district court or the parties.

■ First, our supreme court has held that the district court sitting as a court of equity has inherent power concerning issues of custody of minors. *See In re Santillanes.* This power, however, is usually exercised when there is no other parent or individual to act for the child. *See* 4 J. Pomeroy, *Equity Jurisprudence,* Ch. X, § 1306 (S. Symons 5th ed. 1941). While equity may have the power to take custody away from a parent, it will do so only in extreme circumstances. *Id.,* § 1307. This inherent power is limited to situations where there is no other available or adequate remedy at law. *See, e.g., In re Cabrera,* 381 Pa.Super. 100, 552 A.2d 1114 (1989) (authorizing appointment of a guardian to give consent to medical treatment when death may occur from refusal of treatment). No one contends that the child's life was in danger at the time of the March 1990 hearing.

Second, our statutes relating to marriage and its dissolution empower the district court to "make such an order for the guardianship, care, custody, maintenance and education of the minor children ... as may seem just and proper." NMSA 1978, § 40–4–7(B)(4) (Repl.Pamp.1989); *see also* § 40–4–7(C). This statute gives the district court relatively broad powers with respect to the children of a marriage that is being dissolved. *See Rhinehart v. Nowlin,* 111 N.M. 319, 805 P.2d 88 (Ct.App.1990) (holding the statute gives the district court the power to grant visitation rights to stepparents). However, in this case there is no dissolution action before the district court.

■ Our concern in this case is with the relationship between the court's third and fourth sources of power involving custody and guardianship issues relating to minors, the Probate Code and the Children's Code. In ascertaining the applicability of both statutes, we look to the purposes and legislative intent surrounding both acts as gleaned from their expressed purposes and the language used by the legislature. *Id.* Because both acts deal with the same subject matter, we are required to construe them together, if possible, to give effect to the provisions of both statutes. *State ex rel. Department of Human Servs. v. Avinger.* We first examine the Probate Code, especially Section 45–5–204(A), because the district court in reaching its decision specifically relied upon these provisions.

#### 1. The Probate Code

The legislature has clearly indicated the policies and purposes of the Probate Code. *See* NMSA 1978, § 45–1–102(B) (Repl. Pamp.1989). The primary purpose of the Probate Code is to control the distribution and settlement of decedents' estates, and, with respect to minors, to simplify and clarify the law relating to their affairs. *Id.*

The Probate Code provides three different mechanisms for the appointment of a guardian for an unmarried minor. First, a parent may, by an acknowledged power of attorney, delegate to another person any of the parent's powers regarding the care, custody, or property of the minor child. This delegation may not last for more than six months. *See* NMSA 1978, § 45–5–104 (Repl.Pamp.1989). Second, a parent may make a testamentary appointment of a guardian for a minor child, although the child has some power to object to the ap-

pointment. *See* NMSA 1978, §§ 45–5–202, –203 (Repl.Pamp.1989). Third, the court may appoint a guardian for an unmarried minor "if all parental rights of custody have been terminated or suspended by circumstances or prior court order." *See* § 45–5–204(A). The district court in this case determined that the mother's rights to custody had been suspended by circumstances because she had neglected the child.

■ We find nothing in either the purposes of the Probate Code or the language of this section indicating a legislative intent that Section 45–5–204 permits a child to be removed from the custody of a parent who in fact has the child in his or her custody.

Section 45–5–204 is identical to Section 5–204 of the Uniform Probate Code. The drafting committee's Comment to Section 5–204, promulgated by the National Conference of Commissioners on Uniform State Laws, states:

> Nothing in this Article is intended to deal with the status of a so-called natural guardian, with the authority of a parent over a child, or with authority over a child or children that may be conferred by other state laws.
>
> The court [under the Probate Code] is not authorized to appoint a guardian for one for whom a parent has custodial rights or for one who has a parental guardian.

Uniform Probate Code § 5–204 (Comment), 8 U.L.A. 444, at 445 (1983). Similarly, as observed by R. Wellman, in 2 *Uniform Probate Code Practice Manual,* at 511 (1977):

> Under the [Uniform Probate] Code, the power of the court to appoint a guardian for a minor is narrowly limited. The court may make such an appointment only if: (1) the minor is unmarried; (2) all parental rights of custody have been terminated or suspended by circumstances or prior court order; and (3) no testamentary appointment as guardian has been accepted.... *It should be remembered, however, that the court has no power to appoint a guardian at all if the minor has a living parent entitled to his custody or a guardian appointed by the will of a parent [who] is willing to act.* The parents and their testamentary appointees have, therefore, priority over everyone whom the court might appoint unless the parents have been deprived of custody.... [Emphasis added.]

*See also Morales v. Glenn,* 114 Ariz. 327, 560 P.2d 1234 (1977) (in banc); *Charboneau v. Superior Court of Maricopa County,* 101 Ariz. 586, 422 P.2d 702 (1967) (in banc); *In re Guardianship of Aschenbrenner,* 182 Mont. 540, 597 P.2d 1156 (1979) (holding where parent has actual custody at time the petition is filed, the parents' rights to custody have not been suspended by circumstances).

Other states that have adopted this section of the Uniform Probate Code have interpreted the phrase "suspended by circumstances" in a restricted manner. Thus, it has been held that a parent's rights are "suspended by circumstances" within the meaning of the statute when the parent has consented to the appointment of a guardian, *Stansell v. Superior Court of Maricopa County,* 125 Ariz. 82, 607 P.2d 959 (1980) (in banc); *In re Guardianship of Cruz,* 154 Ariz.App. 184, 741 P.2d 317 (1987), or when the whereabouts of the parent are unknown, *In re Guardianship of Diamond,* 109 Idaho 409, 707 P.2d 520 (Ct.App.1985).

We apply a similar construction. A parent's right to custody is not "suspended by circumstances" if in fact the parent has lawful custody, is present, and has not voluntarily relinquished physical custody of the child. *See In re Guardianship of Aschenbrenner.*

## 2. The Provisions of the Children's Code

Next, we examine the provisions of the Children's Code and its applicability to the child alleged to be neglected.

Like the Probate Code, the Children's Code includes a provision identifying its purposes and policies. The Children's Code has as its central focus children who are alleged to be delinquent, in need of supervision, abused, or neglected. *See* § 32–1–2;

*see also* § 32–1–3(L), (M), (N), (O), (P). With respect to neglected children, the legislative purposes contained in the Children's Code emphasize a legislative objective of keeping the family together whenever possible, and separating the child from his parents and family only when necessary for his welfare, and providing services to assist the child and the family. *See* § 32–1–2(A), (C), (G), and (H).

The Children's Code specifically applies to children alleged to have been neglected. *See* § 32–1–3(L). As expressed in the Code, "neglect" is broadly defined to cover a number of situations, including the situation posed by the case before us. *Id.* The Children's Code also mandates the implementation of substantial procedural safeguards accorded to both parent and child.

■ Under the Children's Code, neglect proceedings may not be initiated unless the children's court attorney determines that such proceedings are in the best interests of the child. § 32–1–17(B). Under Section 32–1–27(L), the court is authorized to appoint a guardian if it determines that the child does not have a parent in a position to exercise effective control over the child. The Code further defines the circumstances under which a child can be taken into custody prior to a hearing on the petition. §§ 32–1–22; –23; –24. The parent is entitled to appointed counsel to defend the allegations of the petition, and the state is required to prove the allegations of neglect by clear and convincing evidence. *See* §§ 32–1–27(J); –31(F). Once a child is adjudicated to be neglected, the children's court may order any of several courses of action, including transfer of custody of the child to a relative or other individual who, after study by the human services department or another agency designated by the court, is found by the court to be qualified to receive and care for the child. *See* § 32–1–34(B). In addition, the court is required to order implementation of a treatment plan. *See* § 32–1–34(C). Where a child is adjudicated to be neglected, the power of the children's court is limited in a manner designed to encourage the return of the child to his parents. *See*

§ 32–1–32.1 (requiring predisposition studies); § 32–1–38 (providing limitations on the time a dispositional order may remain in force); § 32–1–38.1 (providing for periodic review of dispositional judgments).

■ The Children's Code contains provisions authorizing the appointment of a permanent guardian for a child under certain circumstances. Unlike a neglect proceeding, which must be commenced by the children's court attorney, permanent guardianship proceedings may be initiated by a prospective guardian. *Compare* § 32–1–17(B) *with* § 32–1–59(A)(2). The parent is entitled to appointed counsel, and the court may appoint a guardian ad litem for the child. *See* § 32–1–59(F), (G). However, the circumstances under which the children's court may appoint a permanent guardian for the child are substantially the same as those that must be shown in order to terminate parental rights. *Compare* § 32–1–58 *with* § 32–1–54. Thus, the appointment of a guardian under the Children's Code requires substantially more than a showing of neglect. To appoint a guardian for the child, the children's court must find not only that the child has been neglected, but that the "conditions and causes of the neglect ... are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions which render the parent unable to properly care for the child...." § 32–1–58(C)(2).

■ The Children's Code also contains a statutory scheme governing children alleged to be neglected and for the appointment of guardians for such children. The Code recognizes that a parent's right to custody is constitutionally protected, and provides appropriate safeguards that must be followed before a parent's right to custody is suspended. Where the basis for seeking the involuntary removal of the child from the custody of a parent is predicated upon allegations of parental neglect, a party seeking an award of guardianship and an award of child custody must establish parental neglect by clear and convincing evidence and show that the appoint-

**122**

ment is in the child's best interests. Even if the right to custody is temporarily suspended by an adjudication that the child is neglected, the Code requires the department to provide services to undertake efforts to attempt in the reunification of the family and further requires periodic review of the situation.

3. Considering the Statutes Together to Determine the Meaning of Section 45–5–204(A)

■ The guardians argue that we should read Section 45–5–204 of the Probate Code broadly to provide an alternate means of proceeding with respect to neglected children. Such reading would, however, dispense with the rights guaranteed to parents under the Children's Code, and would allow the district court to enter orders of guardianship unlimited in time, and not be subject to the requirement of periodic review. Similarly, this result would not require efforts to remedy the causes of neglect and return the child to his home.

We do not believe that the legislature intended that the Probate Code be used in this manner. As evidenced by its statement of purpose, the Children's Code provides the mechanism whereby a child can be removed from the custody of a parent where the parent in fact is invested with and is currently exercising custody of the child.

Applying the statutes and rationale discussed above to the facts herein, we determine that the district court erred in applying the provisions of the Probate Code to appellees' application for guardianship and in adjudicating the child to be neglected under procedural provisions outside the provisions of the Children's Code. Here, the petition alleging neglect, seeking removal of the child from the mother's custody and the appointment of guardians did not comply with the provisions of Sections 32–1–17(B) and –18. *See also* § 32–1–34(B). Additionally, the record indicates that the court allowed the guardians to prove their case by a preponderance of the evidence rather than by clear and convincing evidence as required by the Children's Code. § 32–1–31(F).

CONCLUSION

In sum, we hold that where the child is alleged to be neglected, and the parent invested with the child's custody contests this allegation, the provisions of the Children's Code govern such neglect proceedings, including the requirement that allegations of neglect must be established by clear and convincing evidence. We reverse the order of guardianship and remand the case to the district court with the following instructions.

When the district court receives the mandate of this court, it shall hold a hearing to determine the present situation of the child and the mother. The guardians should be given the opportunity to amend their petition to set forth grounds supporting their claim that an order of guardianship should be issued in accordance with the provisions of Section 45–5–204 in the event the mother no longer contests the issuance of letters of guardianship, or if the mother's parental rights have been terminated or suspended by circumstances. *Id.* Absent the filing of a new or amended petition alleging a proper basis for the issuance of letters of guardianship in accordance with Section 45–5–204, or pursuant to the provisions of the Children's Code, the petition shall be dismissed and the child returned to the custody of his mother.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.