2013 ND 31

**In Regard to the GUARDIANSHIP OF J.S.L.F., a Minor.**

**G.S., G.J., and K.C., Petitioners and Appellees**

v.

**S.M.L. and B.F., Respondents.**

**B.F., Appellant.**

No. 20120162.

Supreme Court of North Dakota.

Feb. 26, 2013.

Rehearing Denied April 4, 2013.

Lynn M. Boughey, Bismarck, ND, for petitioners and appellees.

Mary E. Seaworth, Grand Forks, ND, for appellant.

GERALD W. VANDE WALLE, Chief Justice.

[¶ 1]   B.F. (father) appealed from a district court judgment appointing G.S., G.J., and K.C. as guardians over J.S.L.F. We reverse the appointment of G.S., G.J., and K.C. as guardians over J.S.L.F., and remand for entry of judgment placing J.S.L.F. in B.F.'s custody.

I.

[¶ 2]   J.S.L.F., a minor, was born in the summer of 2008 to B.F. and S.M.L. They lived in Grand Forks for the first few months of the child's life, and were the subject of several complaints received by Grand Forks County Social Services. Social services investigated and determined services were required at least twice due to neglect of the child and psychological maltreatment. In October of 2008, father, mother, and child moved to Glenburn, N.D., allegedly to avoid social services. While they were in Glenburn, there were at least three more reports from social services about their supervision of the child, the condition of the house they lived in, and the feeding of the child. The child also had serious health problems requiring hospitalization due to malnourishment. In March of 2009, the father moved back to Grand Forks, ending his romantic relationship with the mother. From that point until the institution of this action, the mother raised the child essentially by herself. The father saw the child approximately six times between March 2009 and December 2010, and paid child support.

[¶ 3]   After the father left Glenburn, the mother moved to Job Corps hoping to learn a job skill and learn to better raise the child. While she lived there, there were repeated reports concerning her hygiene, her cleanliness, and her supervision of the child. On November 1, 2010, the mother left the child with two of the co-petitioners so she could move to Bismarck. On November 15, 2010, the mother signed a co-petition for appointment of a guardian in which she gave consent for G.S., G.J., and K.C. to be appointed guardians.

[¶ 4]   On November 17, 2010, the mother arrived at G.S. and G.J.'s home with the police and took the child back. The next day, the district court entered an ex parte order giving G.S., G.J., and K.C. a temporary guardianship over the child. In the order, the court found an emergency existed because the mother was unable to care

for the child, and found the mother's parental rights had been suspended by the circumstances. The father was not given notice before the guardianship was entered, and no hearing was held before the temporary guardianship.

[¶ 5] The temporary guardians made a motion to make the guardianship permanent, and B.F. was served with notice of the petition on December 27, 2010. A hearing was set for January 25, 2011. At B.F.'s request, the hearing was continued. A hearing on the petition for permanent guardianship was finally held on July 28, 2011. The district court ruled that both parents' rights had been suspended by the circumstances, and that it was in the best interests of the child to appoint G.S., G.J., and K.C. as the child's permanent guardians.

## II.

[¶ 6] On appeal, B.F. argues his parental rights were not suspended by circumstances. Section 30.1–27–04, N.D.C.C., provides "[t]he court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." The statute does not define "suspended by circumstances," and we have not defined the term in previous decisions.

[¶ 7] A court is not permitted to appoint a guardian when the minor has a living parent who is entitled to custody. *See Uniform Probate Code Practice Manual Volume 2*, 511 (Richard V. Wellman, ed., 2nd ed., 1977). The guardianship provisions were not intended to "change state juvenile law relating to custodial rights and duties." *Hearing on H.B. 1040 Before the S. Judiciary Comm.*, 43rd N.D. Legis. Sess. (February 27, 1973) (Report of the Legislative Council for consideration by the Committee on Model Laws and Intergovernmental Cooperation) [*Hearing on H.B. 1040*]. "[F]or example, a guardian of a minor cannot be appointed until parental rights have been terminated and termination of parental rights is not covered." *Id.* Therefore, if the minor has a parent that is still alive, in order to appoint a guardian, the court must find that the parent's rights to the child have been terminated by a prior court order, or the parent's rights have been suspended by circumstances. *See* N.D.C.C. § 30.1–27–04.

[¶ 8] Here, it is undisputed that B.F.'s parental rights have not been terminated. Rather, the district court found:

lack of consistent involvement in JSLF's life by [the father] represents an abandonment sufficient to allow this Court to find that his rights have been suspended by circumstances. This substandard care of JSLF by [the father] combined with the voluntary action by [the father] to remove himself from JSLF's life and have subsequent minimal involvement with his son satisfies the "suspended by circumstances" requirement of NDCC 30.1–27–04.

"It is well-settled that parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person." *Hamers v. Guttormson*, 2000 ND 93, ¶ 5, 610 N.W.2d 758. "That right, however, is not absolute." *Id.* If exceptional circumstances exist in a custody dispute between a natural parent and a third party, a court may, in the best interests of the child, place the child in the custody of a third party rather than a natural parent. *Id.* "This Court has not attempted to narrowly define or circumscribe the exceptional circumstances which must exist to permit a court to consider placing custody of a minor child with a third party rather than with the natural parent." *Id.*

[¶ 9] We believe if a parent's rights to his or her child have been "suspended by circumstances," exceptional circumstances exist which may permit a court to consider the best interests of the child. Several other states with similar or identical guardianship statutes have had occasion to define suspended by circumstances. The Idaho Supreme Court held that "[s]uspended by circumstances must contemplate some set of circumstances which deprives a parent of the ability to accept the rights and responsibilities of parenthood." *Guardianship of Copenhaver*, 124 Idaho 888, 865 P.2d 979, 984 (1993). We find this definition persuasive. The petitioners urge, and several other states have concluded, that a parent's rights to a child are suspended by circumstances if they are found to be unfit. *See id.; In re Krystal S.*, 584 A.2d 672, 674 (Me.1991). While a guardianship may be appropriate if a parent has previously been adjudicated to be unfit, we hold that a guardianship proceeding is an inappropriate method to test the fitness of parent. We have previously refused to expand the definition of "exceptional circumstances" to include the question of a parent's fitness. *Hamers*, 2000 ND 93, ¶ 9, 610 N.W.2d 758. Similarly, the guardianship provisions of the Uniform Probate Code were not intended to replace the previously existing law regarding custody. *Hearing on H.B. 1040, supra*, (Report of the Legislative Council). "Where a natural parent's fitness to provide a minimal standard of adequate care of a child is at issue, proceedings under the Uniform Juvenile Court Act, N.D.C.C. ch. 27–20, are available to protect and safeguard the interests of both parent and child." *Hamers*, 2000 ND 93, ¶ 5, 610 N.W.2d 758.

[¶ 10] The present case illustrates the necessity of proceedings under the Uniform Juvenile Court Act. Section 27–20–30(e), N.D.C.C., allows a court to "[a]ppoint a fit and willing relative or other appropriate individual as the child's legal guardian" when a child has been found to be deprived. A finding of deprivation, which includes the finding of unfitness, must be proven by clear and convincing evidence. N.D.C.C. § 27–20–29. Here, the court did not find that B.F. was unfit by clear and convincing evidence, but simply that B.F. had rendered "substandard care." The Uniform Juvenile Court Act also gives the court a host of other options for disposition of the child in lieu of termination in a deprivation case. *See* N.D.C.C. § 27–20–30. Those options were not discussed by the trial court in this proceeding. The guardianship provisions of the Uniform Probate Code were not designed to circumvent the protections afforded to the natural parents and the child under the Uniform Juvenile Court Act. We hold that proceedings under N.D.C.C. ch. 30.1–27 are inappropriate to test the fitness of a parent.

### III.

[¶ 11] The district court ruled that B.F. abandoned J.S.L.F. without stating a legal standard for abandonment. Abandonment can constitute suspension by the circumstances. N.D.C.C. § 27–20–44(1)(a) (stating a court may terminate the parental rights of a parent if the parent abandons the child); N.D.C.C. § 14–15–06(1)(a) (stating consent to adopt a child is not required from a parent who has abandoned the child). In both juvenile court proceedings and adoption proceedings, abandonment is defined as:

a. As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause:

(1) To communicate with the child; or

(2) To provide for the care and support of the child as required by law;

N.D.C.C. § 27–20–02(1)(a); *see also* N.D.C.C. § 14–15–01(1)(a). We have previously provided criteria a district court should look to when considering whether a child has been abandoned:

> [W]e look to such factors as the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Also relevant is the parent's acceptance of parental obligations, such as "to care for, protect, support, educate, give moral guidance to, and provide a home for the child." "A parent's negligent failure to perform his parental duties is significant to the issue of abandonment."

*In re Adoption of S.R.F.*, 2004 ND 150, ¶ 10, 683 N.W.2d 913 (quoting *In re Adoption of A.M.M.*, 529 N.W.2d 864, 866 (N.D. 1995)). "The district court must therefore draw the inferences regarding a parent's intent to abandon from the conduct and the efforts made by the parent to maintain and foster the relationship." *In re A.M.W.*, 2010 ND 154, ¶ 9, 786 N.W.2d 727. If the circumstances show that a parent has abandoned a child, it can be presumed that the parent is not ready and willing to take custody of the child.

[¶ 12] Suspension by the circumstances does not include a lesser degree of the same circumstances constituting termination. If we were to so construe N.D.C.C. § 30.1–27–04, we would provide a way to circumvent the legal standards for properly depriving a parent of his or her children. Therefore, a petitioner seeking to create a guardianship on the grounds of abandonment must show the same circumstances exist that would justify the finding of abandonment under the Uniform Juvenile Court Act or under the Revised Uniform Adoption Act.

[¶ 13] The record in this case does not support a finding that B.F. abandoned J.S.L.F. The district court found that B.F. lived with the child for nine months after the child's birth. B.F. moved back to Grand Forks in March of 2009, and saw the child six times between then and December of 2010, when he was notified of this action. Since the institution of this action, he has had regular visitation with the child. The district court did not find, nor is there evidence in the record indicating B.F. did not contact the child by telephone or other means during that period. B.F. paid child support during the entire period of his absence. A finding of abandonment based on these facts would mean that any parent of limited financial means separated from his or her child by an appreciable distance would be at risk of abandoning his or her child. The facts in the record do not support a finding of abandonment, and therefore the district court's finding that B.F. abandoned J.S.L.F. was clearly erroneous. Because we find B.F.'s parental rights were not suspended by the circumstances, it is unnecessary to address the other arguments raised by the appellants.

## IV.

[¶ 14] We reverse the appointment of G.L., G.J., and K.C. as guardians over J.S.L.F., and remand for entry of judgment placing J.S.L.F. in B.F.'s custody.

[¶ 15] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.