Leland C. RUBEY, Appellant,

v.

ALASKA COMMISSION ON POSTSEC-
ONDARY EDUCATION, Appellee.

No. S–12996.

Supreme Court of Alaska.

Aug. 21, 2009.

Leland C. Rubey, pro se, Anchorage, Appellant.

Mary Ellen Beardsley, Assistant Attorney General, Anchorage, Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

WINFREE, Justice.

## I.  INTRODUCTION

The issue in this case is whether relevant statutes and regulations provide for cancellation of four student loans upon the recipient's medical disability. We conclude that they do not, and we affirm the denial of the recipient's request for medical cancellation of his loan obligations.

| Loan # | Date Note Signed |
|--------|------------------|
| 1 | January 12, 1996 |
| 2 | June 25, 1996 |
| 3 | March 26, 1997 |
| 4 | June 22, 1998 |

Loan Four was co-signed by Theresa Taylor, who later married Rubey. She certified that she understood her liability for Loan Four would begin "when the borrower's obligation begins, and continues even if the borrower's obligation is discharged or canceled."

On April 10, 2006, Rubey submitted a request for cancellation of his loans due to total and permanent disability diagnosed in late 1998. ACPE denied Rubey's request on June 21, 2006, giving three grounds for its decision. First, ACPE found that Rubey had some capacity to repay his loans even after meeting all monthly expenses. ACPE noted that Rubey had continued to incur financial obligations, including "the 2004 mortgage, the 2005 real estate loan, two new credit card accounts opened in 2005 and the March 2003 purchase of two automobiles, for which you are current in repayment." Second, ACPE pointed out that none of Rubey's promissory notes provided for medical cancellation. Finally, ACPE reminded Rubey that his wife's liability for the loan she had co-signed could not be cancelled because of Rubey's disability.

Rubey requested a hearing to appeal the denial of his application for medical cancella-

## II.  FACTS AND PROCEEDINGS

Between 1996 and 1998 Leland Rubey received four education loans from the Alaska Commission on Postsecondary Education (ACPE). The disbursement dates, loan amounts, and deducted loan fees[1] are set forth in the table below. None of Rubey's promissory notes contains a provision specifically allowing medical cancellation. Promissory notes for some pre–1996 ACPE loans did contain provisions specifically allowing medical cancellation.

| Loan Amount | Loan Fee |
|-------------|----------|
| $5,555.00 | 1% ($  55.55) |
| $8,500.00 | 5% ($425.00) |
| $1,600.00 | 5% ($  80.00) |
| $1,667.00 | 5% ($  83.35) |

tion. ACPE instructed Rubey that the hearing would proceed under 20 Alaska Administrative Code (AAC) 15.920(e), requiring Rubey "to prove by a preponderance of the evidence, including testimony by a qualified physician, that [he] is disabled to the extent allowing cancellation of the promissory note *under the terms of the promissory note.*" (Emphasis added.)

At a prehearing conference on September 8, 2006, the parties agreed ACPE would file a motion for summary adjudication. ACPE did so, primarily arguing that because "[t]here is no right to medical cancellation of education loan debt in the statutes and regulations governing the loan program ... eligibility is governed solely by the terms provided in [Rubey's] loan contract(s)." In other words, ACPE contended that Rubey's loans were ineligible for medical cancellation as a matter of law because his promissory notes contained no medical cancellation provisions.

Rubey responded by arguing that because ACPE had charged him a loan origination fee and because loan origination fees are statutorily designated "to offset losses incurred as a result of death, disability, default, or bankruptcy of the borrower,"[2] cancellation due to disability should be considered an implied

---

1.  Former AS 14.43.120(u) provided a "guarantee fee" to offset "losses incurred due to student loan debt cancellation as a result of death, disability, or bankruptcy." Ch. 63, § 38, SLA 1993. In 1996 the statute was amended, renaming the fee

an "origination fee" to offset "losses incurred as a result of death, disability, default, or bankruptcy of the borrower." Ch. 5, § 14, SLA 1996.

2.  AS 14.43.120(u).

benefit of his loan contract. Rubey's promissory notes and other loan information from ACPE echoed or paraphrased the statutory language regarding the purpose of origination fees.

The hearing officer issued a decision on October 19, 2006, concluding that 20 AAC 15.920 governed eligibility for medical cancellation of student loans. The hearing officer determined that 20 AAC 15.920 required Rubey to prove that: (1) after receiving the loans, he became permanently disabled to the extent required by his promissory notes for cancellation; (2) his disability prevented him from working or attending school; (3) if his condition already existed when he received his loans, it substantially deteriorated later; and (4) he could not repay his loans without undue hardship. The hearing officer then concluded that Rubey was ineligible—because his promissory notes did not contain a medical-cancellation provision, Rubey could not prove the first factor. The hearing officer also concluded that the loan origination fee statute, AS 14.43.120(u), did not provide an independent right to medical cancellation. The hearing officer made no findings on the other factors of 20 AAC 15.920, because "[n]o matter how the factual issues regarding Mr. Rubey's medical or financial status were resolved, these issues could not affect Mr. Rubey's entitlement to cancellation of his loan."

The hearing officer's decision constituted final agency action under 20 AAC 15.920(e), and Rubey appealed that decision to the superior court. The superior court ruled that the loan origination fee statute, AS 14.43.120(u), did not entitle Rubey to medical cancellation of his loans. Because the superior court disagreed with Rubey's interpretation of AS 14.43.120(u), it also rejected his contention that 20 AAC 15.920 was inconsistent with the statute. The superior court

concluded that neither statutes nor regulations allowed Rubey to obtain medical cancellation of his student loans.

Rubey appeals pro se.

## III. STANDARD OF REVIEW

■ When the superior court acts as an intermediate court of appeal in administrative cases, we examine the merits of the agency's decision directly.[3] We may affirm the agency's decision on any ground supported by the record.[4]

■ In *Jager v. State* we noted the development of four principal standards of review for administrative decisions: the "substantial evidence test" governs questions of fact; the "reasonable basis test" applies to questions of law involving agency expertise; the "substitution of judgment test" governs questions of law when no expertise is involved; and the "reasonable and not arbitrary test" applies to review of administrative regulations.[5] When we use our independent judgment to interpret a statute, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy,"[6] after considering: (1) the plain meaning of the statute; (2) the legislative purpose of the statute; and (3) the intent of the statute.[7]

## IV. DISCUSSION

### A. Does AS 14.43.120(u) Provide a Right to Medical Cancellation of Student Loans?

■ Rubey argues that AS 14.43.120(u), authorizing ACPE to charge origination fees on education loans, gives him a right to medical cancellation of his loan obligations. Rubey suggests that the phrase "losses incurred as a result of ... [the borrower's] disability"[8] must refer to losses in the form of

---

**3.** *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.,* 171 P.3d 1110, 1115 (Alaska 2007).

**4.** *Benavides v. State,* 151 P.3d 332, 334 (Alaska 2006).

**5.** 537 P.2d 1100, 1107 n. 23 (Alaska 1975).

**6.** *Benavides,* 151 P.3d at 334–35 (internal quotation marks omitted) (quoting *State, Dep't of Rev.*

*v. Mun. of Anchorage,* 104 P.3d 120, 122 (Alaska 2004)).

**7.** *Premera Blue Cross,* 171 P.3d at 1115 (citing *W. Star Trucks v. Big Iron Equip.,* 101 P.3d 1047, 1050 (Alaska 2004)).

**8.** *See supra* note 1. Rubey argues that both versions of the statute envisioned cancellation for disabilities, and ACPE argues that neither version contained a statutory right to medical can-

medical cancellations, making medical cancellation an implied statutory right.[9]

ACPE argues that AS 14.43.120(u) simply creates an account, funded by loan origination fees, to offset ACPE's loan losses: "AS 14.43.120(u) recognizes that [ACPE] may as a practical matter incur losses due to borrowers' deaths, disabilities, bankruptcies, or defaults due to other reasons, and that the statute has no effect on the legal obligations of borrowers to repay their loans." ACPE maintains that providing a fund to offset losses does not—and should not be read to— imply that ACPE *must* suffer those losses or that borrowers have been given a statutory right to cause those losses.

We start by noting that the legislature has never expressly provided for medical cancellation of student loans.[10] In contrast the legislature has expressly allowed forgiveness of student loans in other circumstances.[11] The lack of an explicit right to medical cancellation here, when the legislature has provided for cancellation in other contexts, undercuts Rubey's argument that this right exists.[12]

The legislation implementing loan guarantee fees does not contain a specific statement of legislative intent.[13] Amended AS 14.43.120(h) states that "[s]ecurity may not be required for a loan; however, *a loan guarantee fee, as specified in (u) of this section, shall be charged at the time that the loan is awarded.*"[14] (Amended language emphasized.) This implies that AS 14.43.120(u) was designed to compensate for the fact that security could not be required on ACPE loans—and thus to compensate for the losses ACPE anticipated. ACPE's interpretation is consistent with that purpose. As the superior court noted, "It simply does not follow from the legislature's creation of a fund to offset losses that it therefore intends to forgive a certain class of debts."

Accordingly we are persuaded that ACPE's interpretation not only is reasonable, but also is closer to the plain meaning of the statute, more consistent with the purpose of the statute, and more likely the intent of the

cellation. Although the 1993 version contains explicit reference to debt cancellations, the analysis that follows demonstrates that such language is insufficient to create a right to medical cancellation. If there were a statutory right to medical cancellation, it would exist in both versions of the statute.

9. Rubey cites ACPE testimony before Alaska House Committees to show that the origination fee was intended to provide borrowers an insurance-like benefit. ACPE contends the testimony shows only that ACPE considered the fees to be a form of *self*-insurance—that is, insurance benefitting ACPE. We do not find the testimony particularly conclusive, but we note Rubey's loan applications stated plainly that the guarantee and origination fees did "not provide the borrower any loan insurance" and did "not constitute loan insurance."

Rubey also contends that the phrase "of the borrower" in AS 14.43.120(u) means that the origination fee paid by a specific borrower is to be used to offset potential loss from that borrower's *individual* death, disability, default, or bankruptcy, further implying a right to medical cancellation. Although statutes should be interpreted so that each word has meaning, *see, e.g., Homer Elec. Ass'n v. Towsley,* 841 P.2d 1042, 1045 (Alaska 1992) (noting the "general rule" that statutes "should be construed so that ... no part will be inoperative or superfluous" (internal quotation marks and citations omitted)), we find the weight of an implied individual right to

medical cancellation too great to hang on the fragile hook of the definite article in "the borrower."

10. The legislature did provide a statutory right to medical deferment—as distinct from cancellation—in AS 14.43.120(k)(8). Rubey's deferment eligibility is not before us.

11. *See, e.g.,* AS 14.43.305(e) (governing forgiveness of memorial education loans); AS 14.43.510(b) (governing forgiveness of medical education loans); AS 14.43.640(b) (governing forgiveness of loans for rural teachers).

12. The canon of statutory construction known as *expressio unius est exclusio alterius* provides that "to express or include one thing implies the exclusion of the other." BLACK'S LAW DICTIONARY 620 (8th ed.2004). We infer that the absence of an explicit medical cancellation provision is deliberate.

13. Ch. 63, § 38, SLA 1993.

14. Ch. 63, § 37, SLA 1993. Although the quotation refers to former AS 14.43.120, the current version of the statute is not substantively different. The current version of AS 14.43.120(h) reads: "Security may not be required for a loan; however, a loan origination fee, as specified in (u) of this section, shall be deducted at the time that the loan is disbursed."

legislature. We therefore agree with the superior court and affirm ACPE's interpretation of AS 14.43.120(u) as not providing a right to medical cancellation of student loans.

### B. Do Applicable Regulations Provide a Right to Medical Cancellation of Student Loans?

■ 20 AAC 15.920(a) states, "[A]n application to cancel a promissory note *under a term of the promissory note permitting cancellation for medical disability* is governed by this section." (Emphasis added.) Rubey is not eligible for loan cancellation under terms of his promissory notes permitting medical cancellation because his notes lack such terms. Rubey's eligibility may thus be governed by 20 AAC 15.915(c), which provides that "[t]he appellant has the burden to prove by a preponderance of the evidence that the appellant is entitled to the requested result under the statutes and regulations governing the Alaska education loan programs." But we already have affirmed ACPE's conclusion that AS 14.43.120(u) does not entitle Rubey to medical cancellation of his loans, and Rubey has advanced no other statutory or regulatory basis for medical cancellation of his loans.

Rubey therefore has not proven a right to medical cancellation under either regulation—neither 20 AAC 15.920 nor 20 AAC 15.915 entitles Rubey to medical cancellation of his student loans.

### C. Are ACPE's Actions Consistent with Its Statutory Authority?

■ Rubey makes two intertwined arguments that ACPE is acting outside the scope of its statutory authority by denying

medical cancellation of his loans. Citing *Jerrel v. State, Department of Natural Resources,*[15] Rubey argues that the decision to stop placing provisions for medical cancellation in promissory notes was a policy change requiring Administrative Procedures Act rulemaking. Rubey also argues that 20 AAC 15.920 is not a valid regulation because it arbitrarily makes medical cancellation available only to students who have a permissive term in their promissory notes.[16]

ACPE contends that making medical cancellations available for some loans was an exercise of ACPE's discretion and, conversely, that limiting medical cancellations likewise was an exercise of its discretion. ACPE defends its limitation of medical cancellations as necessary "to ensure a solvent loan program for education loans at the lowest possible interest rates." ACPE further contends that AS 14.42.030(e)(1)[17] authorizes ACPE to promulgate regulations to carry out the purposes of its education loan programs and that 20 AAC 15.920 is "consistent with and reasonably necessary" to those purposes.

We agree with ACPE. As we have already concluded, there is no statutory directive that ACPE provide for medical cancellations of education loans. ACPE has broad discretion to exercise its business judgment in managing its funds and education loan programs. The decision to include medical cancellation provisions in some promissory notes prior to 1996, and the decision to eliminate such provisions in all promissory notes beginning in 1996, both fall within the scope of ACPE's discretionary business judgment[18] and cannot fairly be considered policies requiring compliance with formal rulemaking proce-

**15.** 999 P.2d 138, 143 (Alaska 2000) (holding that a regulation requiring livestock to be marked could not, without passing a new APA regulation, be interpreted to require permanent marks visible from twenty feet).

**16.** The validity of a regulation depends on the regulation being (1) consistent with and reasonably necessary to carry out the purpose of the authorizing statute, and (2) reasonable and not arbitrary. *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971). The burden of demonstrating invalidity falls on the party challenging the regulation. *Lakosh v. Alaska Dep't of Envtl. Conserva-*

*tion,* 49 P.3d 1111, 1114 (Alaska 2002); *Grunert v. State,* 109 P.3d 924, 928–29 (Alaska 2005).

**17.** This section authorizes ACPE to adopt regulations to carry out the purposes of AS 14.43.091 through 14.43.750, including the statutes authorizing financial aid programs (and education loans) for postsecondary education.

**18.** *See, e.g., Vick v. Bd. of Elec. Exam'rs,* 626 P.2d 90, 93 (Alaska 1981) (noting that courts are unlikely to intrude on matters normally within an agency's discretion, unless the area of discretion is novel or questionable).

dures.[19] 20 AAC 15.920 is a properly promulgated regulation providing the mechanics for holders of education loans containing medical cancellation provisions to apply for medical cancellations. Because ACPE may extend loans with or without medical cancellation provisions, there is nothing arbitrary or capricious in limiting the scope of 20 AAC 15.920's application to loans with medical cancellation provisions. We accept 20 AAC 15.920 as a valid exercise of ACPE's statutory authority.

## V. CONCLUSION

Because there is no statutory or regulatory right to medical cancellation, Rubey is not entitled to have his student loan obligations cancelled due to medical disability. We therefore AFFIRM the denial of Rubey's application for medical cancellation of his education loans.

---

**19.** We note that ACPE did not formally adopt a regulation authorizing the insertion of medical cancellation provisions or governing the insertion of those provisions in some but not other promissory notes. If ACPE's decision to stop inserting medical cancellation provisions in promissory notes was a policy decision necessitating formal rulemaking, then surely so was ACPE's original decision to include those provisions in some promissory notes. In that case, ACPE's decision to eliminate medical cancellation provisions would seem to be an appropriate remedy for the original error.