*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF CORRECTIONS, | ) ) ) | Supreme Court No. S-17606 |
| Appellant, | ) ) | Superior Court No. 3AN-18-07739 CI |
| v. | ) ) | O P I N I O N |
| KERRY PORCHE, | ) ) | No. 7523 – April 30, 2021 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Matthias R. Cicotte, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Attorney General, Juneau, for Appellant. Clinton M. Campion, Sedor, Wendlandt, Evans & Filippi, LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

CARNEY, Justice.

## I. INTRODUCTION

After the Department of Corrections (DOC) investigated an allegation that a probation officer was providing special treatment in return for sexual favors and found it to be unsubstantiated, the probation officer sought the investigation records. DOC denied his request and the probation officer appealed to the superior court, which

reversed the denial and ordered the records released because the allegation had not been substantiated. DOC appeals. We reverse the superior court's order because the records are shielded from disclosure by the invasion of privacy exemption to the Public Records Act.

## II.     FACTS AND PROCEEDINGS

### A.     Facts And Administrative Proceedings

In May 2018 a supervisor in DOC's Professional Conduct Unit informed Kerry Porche by letter that DOC had received a report that Porche was "providing special treatment to a probationer in exchange for sexual acts." The supervisor explained that DOC had investigated the allegation, found it to be unsubstantiated, and closed the investigation.

Porche wrote back two days later, requesting copies of all records from the allegation and investigation "[u]nder the Alaska Open Records Law." The supervisor denied the request, citing DOC's policy of keeping investigative records confidential[1] and informing Porche of his right to appeal. Porche appealed to the DOC Commissioner, who upheld the denial. The Commissioner's letter relied on

> Alaska Statute 40.25.120 [Alaska's Open Records Act] which states the request may be denied if production of the records could reasonably be expected to constitute an unwarranted invasion of the personal privacy of a suspect, defendant, victim[,] or witness.
>
> Releasing the requested information to . . . Porche would easily identify the parties that contacted DOC about the matter, as well as the identities of potential witnesses. The

---

[1]     Citing DOC policy, the supervisor's letter listed as "confidential and not to be disclosed except by Court order: Recordings and transcriptions of interviews conducted by PCU staff; investigative reports written by PCU staff; names and personal information of victims and informants."

vehemence with which . . . Porche has pursued this matter further raises concerns that should the report be released it could endanger persons on probation, their families, or friends.

## B. Superior Court Proceedings

Porche appealed to the superior court. Before he filed his opening brief, Porche obtained a redacted copy of DOC's investigative records from his union.

Porche first argued that DOC erred by relying on the Open Records Act's exemption for invasion of privacy. He emphasized that Alaska's "strong commitment to ensuring broad public access to government records" requires that statutory exemptions be narrowly construed.[2] Porche claimed that the exemption could not apply because none of the listed categories of individuals entitled to protection — suspect, defendant, victim, or witness — existed in his case. Porche, as the suspect, waived any objection he had to disclosure of the records. And he argued that because victims "are defined as persons against whom an offense has been perpetrated . . . . a person cannot be treated as a victim unless a criminal offense has been perpetrated." Because the allegations were not substantiated, he argued, there was no crime. And without a crime, Porche insisted, there could be no defendant, victim, or witness.

Porche also argued that DOC had not segregated non-disclosable information from information it was required to disclose; he urged the court to order disclosure of all the records. Finally, he disputed the Commissioner's finding that Porche "posed a danger to persons on probation, their families or friends."

---

   **2**      *Basey v. State, Dep't of Pub. Safety, Div. of State Troopers, Bureau of Investigations* (*Basey I*), 408 P.3d 1173, 1176 (Alaska 2017).

DOC argued that it properly relied on the law enforcement exemption from disclosure[3] and quoted two specific provisions: Records could be properly withheld if they "could reasonably be expected to constitute an unwarranted invasion of the personal privacy of a suspect, defendant, victim, or witness"[4] or if they "could reasonably be expected to disclose the identity of a confidential source."[5] DOC claimed that the records "would easily reveal the identity of 'the parties that contacted DOC about the matter, as well as the identities of potential witnesses' " and that "[t]here is a strong public interest in not disclosing the identities of confidential informants."

DOC also argued that by citing AS 40.25.120 in its entirety, which contains the law enforcement exemption, its denial relied on both the unwarranted privacy exemption in (6)(C) and the confidential source exemption in (6)(D). And it argued that the Commissioner's reasoning for denying Porche's request was relevant to several of the law enforcement exemption's subsections.

DOC additionally asserted that disclosing the records would have "a 'chilling effect' that [would] make[] it more difficult for other potential informants to trust that their identity will not be similarly disclosed." According to DOC, accepting Porche's argument that an unfounded allegation negates the privacy protections in the law enforcement exemption "would place confidential informants in a cruel dilemma where if their accusations are not believed their identity would be revealed." Finally, DOC asserted that Porche's argument that DOC failed to segregate disclosable and non-

---

[3]     AS 40.25.120(a)(6) shields from disclosure "records or information compiled for law enforcement purposes" that fall into seven enumerated categories.

[4]     AS 40.25.120(a)(6)(C).

[5]     AS 40.25.120(a)(6)(D).

disclosable information was moot because Porche had received a redacted copy of the records, which DOC submitted as a supplement to the record.[6]

In his reply, Porche reiterated his argument that because the allegations were unsubstantiated, there was no crime and the records could "not contain the identities of a victim." He also argued that if the allegations had been substantiated and had indicated he had committed a crime, he would have been entitled, as a criminal defendant, to know the identities of the victim and witnesses.

Porche contended that DOC was not entitled to rely on the confidential source exemption because DOC had raised it for the first time on appeal. He argued that DOC had not mentioned the exemption in its initial denial or the Commissioner's decision and that the record did not contain any policies, procedures, or guidelines that related to confidential informants.

Finally, Porche disagreed that disclosure of the records would have a chilling effect. He cited the policy of allowing "broad access to public records" and argued that "fundamental requirements of fairness" and his "right to determine whether he was a victim of the crime of knowingly providing false information to a peace officer" limited DOC's ability to withhold the informant's name.

The superior court agreed with Porche and held that DOC had erred when it withheld the records under the invasion of privacy clause of the law enforcement exemption. It adopted Porche's argument that "since there was no crime, there [was] no victim or witness in need of privacy protections." And the court rejected DOC's

---

[6]     DOC is correct. Because Porche obtained a redacted copy of the investigative report from his union the issue is moot. *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 287 (Alaska 2008) ("We refrain from deciding a question where the facts have rendered the legal issues moot. A claim is moot if it has lost its character as a present, live controversy . . . ." (footnote omitted)).

argument that the confidential source exemption applied because DOC had not raised the argument in the administrative proceedings and the argument was not a part of the agency record. Nevertheless, the court concluded that "there was not a confidential informant in this case" because the allegations were third-hand and "did not contain sufficient information for [DOC] to conduct an administrative investigation."

The court held that Porche was "entitled to the additional records [DOC] has segregated as nondisclosable or redacted" and ordered DOC to "disclose the entire investigation file . . . including those portions that were previously redacted and audio recordings that accompanied the investigation."

DOC appeals.

## III. STANDARD OF REVIEW

"When the superior court is acting as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency or administrative board's decision."[7] There are four standards of review that can apply to an administrative appeal.[8] "[T]he 'substitution of judgment test' governs questions of law when no expertise is involved."[9] In this case the dispute centers around whether the invasion of privacy or confidential source exemptions to the Public Records Act apply to records concerning allegations that are found to be unsubstantiated. Porche has argued, and DOC does not dispute, that DOC did not rely on agency expertise in denying

---

[7] *Griswold v. Homer City Council*, 310 P.3d 938, 940 (Alaska 2013) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 630 (Alaska 2011)).

[8] *Id.* (citing *Rubey v. Alaska Comm'n on Postsecondary Educ.*, 217 P.3d 413, 415 (Alaska 2009)).

[9] *Id.* (citing *Rubey*, 217 P.3d at 415).

Porche's record request. Because the issue in this case is a question of law that does not involve agency expertise, the substitution of judgment standard of review applies.

## IV. DISCUSSION

### A. It Was Error To Hold That The Invasion Of Privacy Exemption To The Public Records Act Did Not Apply.

#### 1. The records were compiled for law enforcement purposes.

The parties agree that the records are subject to the Public Records Act.[10] To be shielded from disclosure under either of the claimed exemptions, the records must be "compiled for law enforcement purposes."[11] We have previously considered exemptions from disclosure in traditional law enforcement contexts.[12] But we have not considered whether records created during an internal agency investigation could be "compiled for law enforcement purposes."[13]

The Alaska Legislature looked to the federal Freedom of Information Act (FOIA)[14] and other states' public records disclosure statutes for guidance while drafting the Public Records Act,[15] which makes FOIA a useful comparison. Under FOIA, records

---

[10] *See* AS 40.25.220(3) (public records generally subject to disclosure).

[11] AS 40.25.120(a)(6).

[12] *See, e.g.*, *Basey I*, 408 P.3d 1173, 1180 (Alaska 2017) (holding that disclosure of criminal investigation records would not interfere with plaintiff's ongoing federal criminal case); *Ramsey v. City of Sand Point*, 936 P.2d 126, 135 (Alaska 1997) (holding that citizens' police records were protected from disclosure under unwarranted invasion of privacy exemption).

[13] AS 40.25.120(a)(6).

[14] 5 U.S.C. § 552 (2018).

[15] The invasion of privacy exemption to disclosure was passed as part of H.B. 405 in 1990. Ch. 200, § 5, SLA 1990. The bill files for each committee that
(continued...)

of a law enforcement agency's internal investigation constitute records compiled "for 'law enforcement purposes' only if [the internal investigation] focuses 'directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.' "[16] The sexual misconduct allegation against Porche could have led to criminal charges; the report states that, if true, the conduct would be "a violation of Alaska Statute (AS) 11.41.425(a)(5), Sexual Assault in the Third Degree." The records therefore satisfy FOIA's criteria for exemption from disclosure. Because the Public Records Act was modeled after FOIA, the records also constitute records "compiled for law enforcement purposes" under the Public Records Act. If one of the specific law enforcement exemptions from disclosure applies, the records may be shielded from disclosure.

### 2. Disclosure would constitute an unwarranted invasion of witnesses' privacy.

Based on "Alaska's strong commitment to ensuring broad public access to government records[,] [w]e have repeatedly held that the [public records] act creates a presumption in favor of disclosure" and that exemptions from disclosure should be

---

[15] (...continued) reviewed the bill contain multiple references to the federal FOIA and to the information acts of other states. *See* John Podesta, Focus Paper 6: A Twenty-First Century Freedom of Information Act: Working from First Principles (in H. State Affairs Comm. File for H.B. 405, 16th Leg., 2d Sess. (1990)); State Freedom of Information Acts (in H. Fin. Comm. File for H.B. 405 and in Sen. State Affairs Comm. File for H.B. 405, 16th Leg., 2d Sess. (1990)); Memo from Maria Gladziszewski, Legislative Analyst, to Kay Brown, Representative (Apr. 20, 1989) (in H. Fin. Comm. File for H.B. 405 and in Sen. State Affairs Comm. File for H.B. 405, 16th Leg., 2d Sess. (1990)).

[16] *Stern v. F.B.I.*, 737 F.2d 84, 89 (D.C. Cir. 1984) (quoting *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974)).

"narrowly construe[d]."[17] But "[t]he Public Records Act explicitly contemplates that some records should be kept confidential, despite the general open disclosure policy."[18]

After providing that "[e]very person has a right to inspect a public record in the state, including public records in recorders' offices," AS 40.25.120(a) then lists 17 exceptions to disclosure. One exception shields certain categories of "records or information compiled for law enforcement purposes,"[19] including those that "could reasonably be expected to constitute an unwarranted invasion of the personal privacy of a suspect, defendant, victim, or witness."[20]

The superior court agreed with Porche that to have a "victim or witness" in need of protection, a crime must have been committed. And it agreed with him that no crime had been committed because DOC determined that the allegations were not substantiated. The court then concluded, "As there was no crime, there is no victim or witness in need of privacy protections" and held that the invasion of privacy exemption "does not justify the denial" of Porche's request for records.

But as DOC points out, "That a witness may [be] found not to be credible, or to have made a statement that is not substantiated, does not negate that they [sic] are a witness." It argues that "[t]here is no statutory basis" to conclude that "the identity of a witness[] . . . becomes subject to disclosure if the State determines later that the information is not substantiated."

---

[17]     *Fuller v. City of Homer*, 75 P.3d 1059, 1061-62 (Alaska 2003).

[18]     *Basey v. State, Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigations* (*Basey II*), 462 P.3d 529, 538 (Alaska 2020).

[19]     AS 40.25.120(a)(6).

[20]     AS 40.25.120(a)(6)(C).

Although we have previously interpreted the invasion of privacy exemption,[21] we have never directly addressed the argument Porche makes. To determine whether the invasion of privacy exemption applies in this case requires us to interpret the statutory section's meaning. "We interpret statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[22] "We begin by examining the text" and "apply a sliding scale approach to statutory interpretation [so that] '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be' to overcome that plain meaning."[23] "We also 'narrowly construe[]' Public Records Act exemptions 'to further the legislative policy of broad access.' "[24]

The only term in dispute is the definition of a witness under the law enforcement invasion of privacy exemption.[25] The Public Records Act does not define witness, "but absent 'a definition, we construe statutory terms according to their common

_____

[21]    *See Ramsey v. City of Sand Point*, 936 P.2d 126, 128-29, 135 (Alaska 1997) (holding that group of citizens that signed petition to remove police officer had "a reasonable expectation that their contacts with the police department will not be publicly disclosed simply because they signed a petition").

[22]    *Basey II*, 462 P.3d at 535 (quoting *Michael W. v. Brown*, 433 P.3d 1105, 1109 (Alaska 2018)).

[23]    *Id.* (quoting *Mat-Su Valley Med. Ctr., LLC v. Bolinder*, 427 P.3d 754, 763 (Alaska 2018)).

[24]    *Id.* (quoting *Basey I*, 408 P.3d 1173, 1176 (Alaska 2017) (alteration in original)).

[25]    Porche, the suspect, has waived any right he has for the records to be shielded from disclosure. Since the allegation was brought to DOC by a third party, there also does not appear to be an identifiable victim.

meaning.' "[26]  As commonly understood, a witness is "[o]ne who can give a firsthand account of something seen, heard, or experienced"[27] or "one that gives evidence regarding matters of fact under inquiry."[28]  Black's Law Dictionary defines a witness as "[s]omeone who sees, knows, or vouches for something."[29]  None of these definitions differentiates between a witness whose allegation or evidence is subsequently substantiated and one whose allegation or evidence is not.  Neither does the statutory text, which does not define or limit a "witness."[30]  Including such a distinction would read a new requirement into the statute.

Porche relies on the Alaska Criminal Rules to argue that "[a] 'witness' means a person contacted in connection with a criminal case because the person may have knowledge or information about the criminal case."  He then contends that "[b]ecause there was no criminal case, there was no witness in this matter."  But the rule he cites applies to *criminal* cases; it defines its terms with reference to its subject matter — cases in which an individual has been charged with a crime.  As Porche correctly observes, if he had been charged with a crime as a result of the allegations that DOC investigated, the criminal rules would have governed his case and he would have been entitled to numerous additional due process and other constitutional protections —

_____

**26**     *Basey II*, 462 P.3d at 535 (quoting *Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Commerce*, 414 P.3d 630, 635 (Alaska 2018)).

**27**     *Witness*, AMERICAN HERITAGE DICTIONARY (5th ed. 2016).

**28**     *Witness*, WEBSTER'S INTERNATIONAL DICTIONARY (3d ed. 2002).

**29**     *Witness*, BLACK'S LAW DICTIONARY (11th ed. 2019).

**30**     *See* AS 40.25.120(a)(6)(C) (shielding records compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of the personal privacy of a suspect, defendant, victim, or witness").

among them the right to confront witnesses and obtain information including their identities. DOC did not substantiate the allegations against Porche, removing him from both the risks and the additional entitlements to discovery that would have followed had he been charged with a crime. His reliance upon the Alaska Criminal Rules is misplaced.

Nor does Porche's assumption that the law enforcement exemption applies only in criminal cases find any support in the language of the exemption. The statute states broadly that information "compiled for law enforcement purposes" may be exempt.[31] Records of an investigation, even one concluding that the allegation is unsubstantiated, would still be "compiled for law enforcement purposes." Porche's reading, which the superior court adopted, would unduly narrow the scope of the law enforcement exemption.

The legislative history also does not support a distinction between witnesses involved in substantiated and unsubstantiated allegations. The legislature amended the Public Records Act in 1990[32] and expanded the exemptions from disclosure, including the invasion of privacy exemption.[33] While the legislators did not specifically discuss the exemption, they frequently emphasized the importance of balancing disclosure and privacy, with a focus on the public's right to know if their personal information was disclosed.[34]

---

[31]     AS 40.25.120(a)(6).

[32]     The amendment was largely an effort to clarify disclosure requirements for electronic media. *See* ch. 200, § 1, SLA 1990.

[33]     *See* ch. 200, § 5, SLA 1990.

[34]     *See* ch. 200, § 1, SLA 1990 ("The legislature finds that . . . to protect an individual's right to privacy under the state and federal constitutions, the state shall inform individuals if personal information about them will be subject to public

(continued...)

Neither the statutory text nor legislative history of the exemptions supports Porche's argument that the invasion of privacy exemption exempts disclosure of the names of the people interviewed in the course of an investigation only if the allegations are eventually substantiated. The person who made the allegation against Porche and the third parties that DOC contacted during its investigation are all witnesses who presumably have a reasonable expectation of privacy as to their identities. Because DOC conducted its investigation for law enforcement purposes, the invasion of privacy exemption from disclosure applies. It was error for the superior court to conclude that because "there was no crime, there is no victim or witness."

We also agree with DOC's argument that releasing the identities of the witnesses would have a "chilling effect" on its ability to investigate such allegations. Knowing that their identities could be revealed to someone who could retaliate against them would likely lead to fewer complaints and could increase witnesses' reluctance to be frank in interviews. "The Public Records Act explicitly contemplates that some records should be kept confidential, despite the general open disclosure policy."[35] The identities of witnesses interviewed by DOC in its investigation of the allegation against Porche fall into this category.

---

[34] (...continued) disclosure."). Representative Kay Brown, who sponsored the bill, emphasized that "HB 405 tries to balance the privacy concerns and to protect people's opportunity to know when information about them will be distributed." Minutes, H. State Affairs Comm. Hearing on H.B. 405, 16th Leg., 2d. Sess. (Feb. 1, 1990) (statement of Kay Brown, Representative).

[35] *Basey II*, 462 P.3d 529, 538 (Alaska 2020).

**3.  The records would be shielded from disclosure under FOIA, which contains a nearly identical exemption.**

FOIA, on which the Public Records Act is modeled, is especially helpful in this context because the exemptions at issue in this case are almost identical to those found in FOIA[36] and the FOIA exemptions have been extensively analyzed by the federal courts. We have found federal decisions construing nearly identical federal statutes to be persuasive authority when we interpret Alaska statutes.[37]

Under one FOIA exemption, the government is not required to disclose law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[38] Alaska's analogous exemption adds language specifying

---

[36]  *Compare* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; [or] (D) could reasonably be expected to disclose the identity of a confidential source"), *with* AS 40.25.120(a)(6) (exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of the law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of the personal privacy of a suspect, defendant, victim, or witness; [or] (D) could reasonably be expected to disclose the identity of a confidential source").

[37]  *See, e.g.*, *Dapo v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 454 P.3d 171, 181 (Alaska 2019) (considering interpretations of the Federal Tort Claims Act as persuasive authority in construing Alaska's version); *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1087 (Alaska 2012) (considering interpretations of similar federal legislation as persuasive authority in construing Alaska's statute substituting the state as the defendant in certain tort suits brought against a state employee).

[38]  5 U.S.C. § 552(b)(7)(C).

that it is the "personal privacy of a suspect, defendant, victim, or witness" that may be protected.[39] The federal statute does not include those limitations.

The United States Supreme Court has formulated a test for disclosure under exemption 7(C) balancing the privacy interests at stake with the public's interest in disclosure.[40] The Court has reiterated that "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.' "[41] The Court has expressed particular concern for the privacy rights of private citizens:

> Law enforcement documents obtained by Government investigators often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance. There is special reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access in the ordinary course.[42]

The United States Court of Appeals for the District of Columbia Circuit has also noted that "[t]he 7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses,

---

[39]    AS 40.25.120(a)(6)(C).

[40]    *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

[41]    *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (alteration in original) (emphasis in original) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 775).

[42]    *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 166 (2004).

and investigators."[43]  As a result, it has held that "FOIA ordinarily does not require the disclosure of law enforcement documents (or portions thereof) that contain private information" and stressed that "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated."[44]

The Supreme Court has recognized that the core purpose of FOIA is to "contribute significantly to public understanding of the operations or activities of the government."[45] Obtaining personal information about private parties through FOIA does not help elucidate the inner workings of the government; instead, it allows the requester to obtain information about individuals that would not otherwise be available.

In part because disclosure of personal information does not serve the "core purpose" of FOIA, federal courts have read FOIA's exemption 7(C) to be particularly protective of the identities of third parties implicated in law enforcement records, and we consider their decisions as we apply the virtually identical section of our Public Records Act.  Disclosing the identities of the witnesses interviewed during DOC's investigation of Porche's alleged misconduct would not "contribute significantly to public understanding of the operations or activities of the government."[46]  The identities and the witnesses' involvement in the investigation are rather the type of "intimate personal data,

---

[43]     *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (quoting *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir.1981)).

[44]     *Blackwell v. F.B.I.*, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting *Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Circ. 2007)).

[45]     *Reporters Comm. for Freedom of the Press*, 489 U.S. at 775.

[46]     *Id.*

to which the public does not have a general right of access in the ordinary course."[47]  It therefore appears that Porche would not be entitled to disclosure under FOIA.  He is likewise not entitled to disclosure under the Public Records Act.[48]

## V.    CONCLUSION

We REVERSE the superior court's order disclosing all DOC records to Porche.  We REMAND for further proceedings consistent with this opinion.

---

[47]     *Favish*, 541 U.S. at 166.

[48]     DOC also argued to the superior court that a second law enforcement exemption, AS 40.25.120(a)(6)(D), applied because releasing its records "could reasonably be expected to disclose the identity of a confidential source."  The superior court declined to address the argument because DOC had not raised it during the administrative proceedings and it was not part of the agency record.  We need not reach this issue because of our decision that the invasion of privacy exemption shields the records from disclosure.